[No. 12545–5–II.   Division Two.   July 1, 1991.]

SHARON LEE OTTIS, *as Guardian ad Litem, Appellant,* v. STEVENSON–CARSON SCHOOL DISTRICT NO. 303, ET AL, *Respondents.*

---

*Ronald H. Reynier, Jr.,* for appellant.

*Roland L. Skala* and *Weeks & Skala,* for respondents.

MORGAN, J.—Jay Ottis, a student in Stevenson–Carson School District No. 303, sustained a serious knee injury while wrestling in a physical education class taught by Albert McKee. Acting as guardian ad litem, his mother, Sharon, filed suit against the district and McKee. Trial commenced on August 8, 1988, and resulted in a verdict for defendants. Plaintiff appeals, her principal contention being that another district employee, James Hurley, was allowed to sit on the jury. We affirm.

On the first day of trial, after plaintiff had exhausted all her peremptory challenges, James Hurley was called as a prospective juror. Hurley was currently employed as a teacher with the Stevenson–Carson District, and had been so employed since 1976. He had coached various sports, for both boys and girls, at the middle school and high school levels. For a year, he had been an assistant wrestling coach in one of the district's middle schools, but he had little specialized training in wrestling. He had previously taught at the high school where the injury occurred but was currently teaching at a middle school. For 1 year, he had been an assistant football coach while McKee was head football coach. Hurley had coached Jay Ottis' brother in football, but could not recall whether he had coached Jay himself.

He had taught McKee's two sons in school, and he continued to be acquainted with them because as adults they had become teachers in the District. Outside of school, Hurley's social contact with McKee was "fairly limited". Until the. morning of trial, Hurley had been unaware of the court proceedings.

On voir dire, Hurley stated that he could render an impartial verdict and not be influenced by his past experience. Nevertheless, plaintiff's counsel made an oral motion challenging him for cause. Plaintiff's counsel did not state any specific grounds or authority, and the trial court denied the motion. Later the same day, the jury was sworn and plaintiff's counsel gave his opening statement.

On the morning of the second day of trial, prior to defense counsel's opening statement, plaintiff's counsel filed a written motion to strike Hurley from the panel, or in the alternative to strike the entire panel. The grounds stated in the written motion were "juror misconduct and the fact that Mr. Hurley could act as a witness to pertinent issues in this case." In the course of announcing on the record that he had received the motion, the trial judge stated, "[C]ounsel did not cite it as grounds, but I wonder about implied bias. . . ." As far as the record shows, this was the first time implied bias was mentioned by anyone involved with the case.

After receiving the written motion, the trial judge allowed additional argument by counsel. Both commented on his suggestion of implied bias, but neither asserted that Hurley was automatically disqualified as a juror because he was employed for wages by the school district.[1]

Also, the trial judge allowed additional voir dire of the juror. Except for one question asked by the trial judge, all

---

[1]According to the record, plaintiff's argument on implied bias was as follows:

As far as the implied bias, and at one point there was a master–servant between the Defendant here and Mr. Hurley, and that he worked as the assistant coach under Mr. McKee. It was obviously an employee–employer relationship with Stevenson–Carson School District.

of the questions concerned Hurley's relationship with Jay Ottis, and none dealt with Hurley's relationship with the defendants. At the end of the additional voir dire, plaintiff's counsel again challenged for cause without stating any grounds, and the motion was again denied.

After the jury returned a verdict for defendants, plaintiff filed a motion for new trial on various grounds that will be discussed below. The court denied the motion.

On appeal, plaintiff contends that the trial court abused its discretion by refusing to dismiss Hurley when she challenged him for cause,[2] and by refusing to grant her motion for new trial. The two contentions will be considered separately.

# I
## CHALLENGES FOR CAUSE

In Washington, a comprehensive legislative scheme governs jury challenges. Challenges may be peremptory or for cause. RCW 4.44.130; *see also* CR 47(e). Challenges for cause may be general or particular. RCW 4.44.150; *see also* CR 47(e). A particular challenge for cause may be grounded

---

Whether that gets into a close enough area where the time between what he thinks versus what conversation occurred on the job, that's a tenuous argument, but I think it's an argument that has to be made too. I just didn't have time to put that out on paper.

We have a corporate shareholder, a minor shareholder not being able to sit on the case, whom the corporation names as a Defendant. Here we have somebody who is pretty inextricably intertwined with the school district as an employee. There are too many things going on here that I think give him far too much knowledge; which if he doesn't impart to the jury, it's going to ruin or take away his opportunity to make any sort of decision fairly and impartially.

[2]Plaintiff's first assignment of error refers only to implied bias. However, the statement of the issue related to that assignment obviously includes actual bias, as does one of the grounds upon which plaintiff assigns error to the trial court's denial of her motion for new trial. Consequently, we consider this first contention as including arguments regarding both implied and actual bias.

on actual or implied bias. RCW 4.44.170;[3] RCW 4.44.190;[4] RCW 4.44.180;[5] *see also* CR 47(e).

## A. Actual Bias

Actual bias means the existence of a state of mind on the part of the juror, with reference to the action or any party, which satisfies the court that the challenged person cannot try the issue impartially and without prejudice to the substantial rights of the party challenging. RCW 4.44.170(2); *see also* RCW 4.44.190. Therefore, when a challenge for

---

[3]RCW 4.44.170 provides in part:

"Particular causes of challenge are of three kinds:

"(1) For such a bias as when the existence of the facts is ascertained, in judgment of law disqualifies the juror, and which is known in this code as implied bias.

"(2) For the existence of a state of mind on the part of the juror in reference to the action, or to either party, which satisfies the court that the challenged person cannot try the issue impartially and without prejudice to the substantial rights of the party challenging, and which is known in this code as actual bias."

The third kind, defect in the functions or organs of the body, is not pertinent here.

[4]RCW 4.44.190 provides:

"A challenge for actual bias may be taken for the cause mentioned in RCW 4.44.170(2). But on the trial of such challenge, although it should appear that the juror challenged has formed or expressed an opinion upon what he may have heard or read, such opinion shall not of itself be sufficient to sustain the challenge, but the court must be satisfied, from all the circumstances, that the juror cannot disregard such opinion and try the issue impartially."

[5]RCW 4.44.180 provides:

"A challenge for implied bias may be taken for any or all of the following causes, and not otherwise:

"(1) Consanguinity or affinity within the fourth degree to either party.

"(2) Standing in the relation of guardian and ward, attorney and client, master and servant or landlord and tenant, to the adverse party; or being a member of the family of, or a partner in business with, or in the employment for wages, of the adverse party, or being surety or bail in the action called for trial, or otherwise, for the adverse party.

"(3) Having served as a juror on a previous trial in the same action, or in another action between the same parties for the same cause of action, or in a criminal action by the state against either party, upon substantially the same facts or transaction.

"(4) Interest on the part of the juror in the event of the action, or the principal question involved therein, excepting always, the interest of the juror as a member or citizen of the county or municipal corporation."

actual bias is made, the question for the trial judge is whether the prospective juror's state of mind is such that he or she can try the case fairly and impartially. RCW 4.44.190.

This question is one of preliminary fact. It is a question of fact because, rather than involving a general policy or rule of law, it involves the state of mind of a specific person (the challenged juror), at a specific time (the time of jury selection), in a specific case (the case being litigated). It is a preliminary question because it must be resolved before the challenge itself can be ruled upon.[6]

The procedure for deciding questions of preliminary fact related to jury challenges, including actual bias, is set forth in the statutes. When a particular challenge for cause is made, the opposing party can deny it, RCW 4.44.230, orally, RCW 4.44.250, on grounds that it is facially insufficient or that the facts needed to support it are not true. RCW 4.44.230. If the denial is based on facial insufficiency, the court must assume the alleged facts to be true and then determine sufficiency. RCW 4.44.230. If the denial is based on a claim that the alleged facts are not true, the court "shall try the issue and determine the law and the facts." RCW 4.44.230. At this "trial", the rules of evidence apply, RCW 4.44.240, although we recognize that the parties do not customarily invoke them.[7] *See also* CR 47(e).

When resolving the preliminary fact question of whether a particular juror is actually biased within the meaning of statutes, a trial judge uses fact–finding discretion which is the same as that used to resolve any other issue of fact. This discretion includes the power to weigh

---

[6]Analogous questions of preliminary fact are those controlling the admission and exclusion of evidence. *See* ER 104(a).

[7]Except for the fact that the Legislature has mandated that the Rules of Evidence be applied upon demand, these procedures are approximately analogous to those used to resolve questions of fact preliminary to the admission or exclusion of evidence. *See* ER 104(a); Fed. R. Evid. 104(a); *Bourjaily v. United States,* 483 U.S. 171, 97 L. Ed. 2d 144, 154, 107 S. Ct. 2775 (1987).

the credibility of the prospective juror and any other persons involved, *see State v. Noltie,* 116 Wn.2d 831, 839, 809 P.2d 190 (1991), and to choose among reasonable but competing inferences. Moreover, it must be exercised on the basis of probabilities, not possibilities, *State v. Noltie,* 116 Wn.2d at 839, 840, which is equivalent to saying that the challenging party has the burden of proving the facts necessary to the challenge by a preponderance of evidence. *See Bourjaily v. United States,* 483 U.S. 171, 97 L. Ed. 2d 144, 152, 107 S. Ct. 2775 (1987) (in federal criminal case, question of fact preliminary to admission of evidence determined by preponderance of evidence).

Although granting or denying a particular challenge for cause is a matter addressed to the discretion of the trial judge, *State v. Rupe,* 108 Wn.2d 734, 749, 743 P.2d 210, *cert. denied,* 486 U.S. 1061 (1987); *State v. Gilcrist,* 91 Wn.2d 603, 611, 590 P.2d 809 (1979); *State v. Gosser,* 33 Wn. App. 428, 433, 656 P.2d 514 (1982); *Miles v. F.E.R.M. Enters., Inc.,* 29 Wn. App. 61, 64, 627 P.2d 564 (1981), on a challenge for actual bias the trial judge's discretion will ordinarily be exhausted once he or she has resolved the preliminary fact question concerning the prospective juror's state of mind.[8] The challenge must be granted—as obviously it will be—if the trial judge finds by a preponderance of evidence that the prospective juror's state of mind is such that he or she cannot try the case fairly and impartially. RCW 4.44.170(2); RCW 4.44.190; *State v. Gosser,* 33

---

[8] Cases in which a trial court will be exercising power in addition to its fact-finding discretion are those in which it is faced with a question of law. For example, in *McCorkle v. Mallory,* 30 Wash. 632, 637, 71 P. 186 (1903), the trial court, and later the Supreme Court, had, to decide whether a prospective juror is employed for wages by the adverse party, within the meaning of RCW 4.44.180(2), when he or she is an employee of an attorney for the adverse party. And in *Catarau v. Sunde & d'Evers Co.,* 188 Wash. 592, 63 P.2d 365 (1936), the trial court, and later the Supreme Court, had to decide whether a prospective juror is employed for wages by the adverse party, within the meaning of RCW 4.44.180(2), when he or she is employed by one who holds stock in a corporation that is the adverse party. When a trial court decides such issues of law, it is not ordinarily said to be exercising "discretion".

Wn. App. at 433 ("If, however, a juror should have been excused for actual bias, but was not, the remedy is reversal"). The challenge cannot be granted—as obviously it will not be—if the trial judge finds by a preponderance of the evidence that the prospective juror's state of mind is such that he or she can try the case fairly and impartially.

An appellate court reviews a trial court's decision on actual bias in the same way as it reviews any other factual determination by a trial court. Rather than making its own de novo decision, the appellate court must defer to the trial court's decision.[9] *State v. Noltie,* 116 Wn.2d at 840; *State*

---

[9]In the very recent case of *State v. Noltie, supra,* the Supreme Court discussed at some length the principle that the appellate court is to defer to the trial court on the factual question of whether a particular juror in a particular case can be fair and impartial. In 116 Wn.2d at 839–40, it said:

[T]he trial court is in the best position to determine a juror's ability to be fair and impartial. It is the trial court that can observe the demeanor of the juror and evaluate and interpret the responses.

Considerable light will be thrown on the fairness of a juror by the juror's character, mental habits, demeanor, under questioning and all other data which may be disclosed by the examination. A judge with some experience in observing witnesses under oath becomes more or less experienced in character analysis, in drawing conclusions from the conduct of witnesses. The way they use their hands, their eyes, their facial expression, their frankness or hesitation in answering, are all matters that do not appear in the transcribed record of the questions and answers. They are available to the trial court in forming its opinion of the impartiality and fitness of the person to be a juror. The supreme court, which has not had the benefit of this evidence recognizes the advantageous position of the trial court and gives it weight in considering any appeal from its decision. Unless it very clearly appears to be erroneous, or an abuse of discretion, the trial court's decision on the fitness of the juror will be sustained.

14 L. Orland & K. Tegland, Wash. Prac., *Trial Practice* § 203, at 332 (4th ed. 1986).

For the very reason that reasonable minds can well differ on this issue, we defer to the judgment of the trial court in this case. The trial court was in the best position to judge whether the juror's answers merely reflected honest caution based on her lack of prior jury experience or whether they manifested a likelihood of actual bias. . . .

(Footnote omitted.) *See also Robinson v. Safeway Stores, Inc.,* 113 Wn.2d 154, 157–58, 776 P.2d 676 (1989) (trial court's findings of fact regarding juror's truthfulness during voir dire will not be disturbed if supported by substantial evidence).

*v. Rupe*, 108 Wn.2d at 749; *State v. Gosser*, 33 Wn. App. at 434. This is done by taking the evidence in the light most favorable to the prevailing party below,[10] which in turn means that the appellate court must accept the trial judge's decision regarding the credibility of the prospective juror and any other persons involved, as well as the trial judge's choice of reasonable inferences.[11]

Applying these principles to the present case, we hold that the trial judge did not abuse his discretion by denying plaintiff's challenge for actual bias—in other words, we defer to the trial judge's factual determination that Hurley's state of mind was such that he could fairly and impartially try the case. To be sure, Hurley's long–term contact with various persons involved in the case, as well as his duties for and long association with the school district, was sufficient to support a reasonable inference that his state of mind was such that he could not try the case fairly and impartially. *Cf. State v. Parnell,* 77 Wn.2d 503, 463 P.2d 134 (1969) (juror who listened to defendant's preliminary hearing for 2 hours could not try case fairly). On the other hand, Hurley's responses to various questions, including his testimony that he could set aside his prior

---

[10]Throughout the litigation process, one actor defers factual decisions to another by taking the evidence in the light most favorable to whatever party is asserting that a factual question exists. Within the trial court itself, this is true when the trial judge defers to the factual decisions of the jury. CR 56 (summary judgment; decision to defer made before trial); CR 41(b)(3) (motion to dismiss after plaintiff's case in chief; decision to defer made at midpoint of trial); CR 50(a) (motion for directed verdict; decision to defer made at conclusion of evidence); CR 50(b)(motion for judgment n.o.v.; decision to defer made post trial); ER 602, ER 901, ER 104(b) (admissibility of evidence over objections of no personal knowledge, no authentication, and not being connected up; decision to defer made at time of ruling on objection). Between courts, it is true when an appellate court defers to the factual decisions of the trial court.

[11]An issue of law will rarely arise in connection with a challenge for actual bias, but should that occur, the appellate court makes its own determination rather than deferring to the decision of the trial court. *Cf. Hontz v. State,* 105 Wn.2d 302, 311, 714 P.2d 1176 (1986) (on summary judgment, trial and appellate courts engage in same inquiries).

knowledge and associations and render a fair decision, supported a reasonable and competing inference that he could try the case fairly and impartially. RCW 4.44.190; *State v. Gilcrist, supra.* Because the evidence supporting each inference was such that a reasonable person could adopt either one, the choice of inferences was for the trial judge, and he acted within his discretion when he found that Hurley's state of mind did not constitute actual bias.

## B. Implied Bias

██ Insofar as pertinent to this case,[12] implied bias exists when the prospective juror is "in the employment for wages, of the adverse party". RCW 4.44.180(2). As before, this is a question of preliminary fact. Rather than involving any policy or rule of law, it involves whether this particular juror has certain relationships with this particular adverse party, at the time of the trial in this particular case.

██ The procedure governing this question of preliminary fact is the same as discussed above. The trial judge has his or her usual fact–finding discretion, which includes the right to weigh credibility and choose among reasonable but competing inferences, and the appellate court reviews by using the rules already described. *See State v. Noltie, supra.*

Subject to at least one exception,[13] when a challenge for implied bias is based on the adverse party employing the juror for wages, the trial judge's discretion will ordinarily be exhausted once the question of preliminary fact is

---

[12]Plaintiff also relies upon various other provisions of the implied bias statute, including the existence of a master–servant relationship between Hurley and the school district, that Hurley was "a partner in business with" McKee, and that Hurley had an interest in the action. Given the facts of this case, none of these add anything to the contention that Hurley was employed by the district for wages, and for convenience we limit our discussion to that provision.

[13]See the discussion of *State v. Johnson,* 42 Wn. App. 425, 712 P.2d 301 (1985), *review denied,* 105 Wn.2d 1016 (1986) *infra.*

resolved.[14] If the judge finds, based on a preponderance of evidence, that the juror is employed for wages by the adverse party, there is implied bias (RCW 4.44.180(2))—*i.e.*, "bias conclusively presumed as matter of law", *United States v. Wood,* 299 U.S. 123, 133, 81 L. Ed. 78, 82, 57 S. Ct. 177 (1936)—and such bias "in judgment of law disqualifies the juror". RCW 4.44.170(1).

The Washington cases are in accord. In *McMahon v. Carlisle–Pennell Lumber Co.,* 135 Wash. 27, 28, 236 P. 797 (1925), the Washington Supreme Court said:

> It appears that the juror Burchett was called to the box and, upon his voir dire examination, stated that he was employed by the respondent, whereupon he was challenged by appellant upon the ground of implied bias. . . .
>
> . . . .
>
> It is clear from a reading of the statute [present RCW 4.44-.180(2)] that the challenge should have been sustained and that to refuse to do so was error.

And in *Washington v. Seattle,* 170 Wash. 371, 373–74, 16 P.2d 597, 86 A.L.R. 113 (1932), the Washington Supreme Court held that a husband employed for wages by Seattle's municipal railway system was disqualified by implied bias in a case to which the railway system was a party, and that his wife, because of her community property interest in the husband's wages, was similarly disqualified. *See also Basil v. Pope,* 165 Wash. 212, 217, 5 P.2d 329 (1931), wherein the Washington court held that a juror within the fourth degree of consanguinity to the adverse party was subject to challenge for implied bias, although the challenge was waived because not timely made.

In the case before us, it was uncontroverted that Hurley was employed for wages by the school district,[15] and that the district was an adverse party in the litigation. These

---

[14]We express no opinion on whether this is true when implied bias is based on other grounds, such as whether the juror has an "interest" in the action within the meaning of RCW 4.44.180(4).

[15]Hurley was employed permanently and full time. We express no opinion on the effect of temporary or part–time employment.

facts established implied bias within the meaning of RCW 4.44.170(1) and .180(2), and Hurley was not qualified to serve. As a matter of law, the trial judge was required to disqualify him if (1) there was no applicable exception to the implied bias statutes, and (2) the plaintiff properly asserted her challenge.

There was no applicable exception. In criminal cases, the implied bias statute has been made subject to a judicially crafted exception for some governmental employees. Thus, in *State v. Johnson,* 42 Wn. App. 425, 429, 712 P.2d 301 (1985), *review denied,* 105 Wn.2d 1016 (1986), this court said:

> In modern times, it is unlikely that jurors would be influenced by their employment relationship with an arm of the State that is not prosecuting the criminal action. We believe that in order for a government employee to stand "in the relation of . . . master and servant . . . to the adverse party" or to be an employee of "the adverse party" under RCW 4.44.180(2), there must be a substantial relationship between the interests the prospective juror has in his employment and the interest the government is advancing as a litigant.

*See also State v. Galbraith,* 150 Wash. 664, 666–67, 274 P. 797 (1929); *State v. Bernson,* 40 Wn. App. 729, 700 P.2d 758, *review denied,* 104 Wn.2d 1016 (1985); *contra, Crawford v. United States,* 212 U.S. 183, 53 L. Ed. 465, 29 S. Ct. 260 (1909) which was legislatively reversed as to criminal litigation by a 1935 act of Congress. *United States v. Wood,* 299 U.S. at 130.

For two reasons, this judicially crafted exception does not operate in this case. First, it has never been extended to civil cases, and we decline to do that today. Second, even if we extended it to civil cases generally, it would not affect this case. Hurley's interest lay in his employment as a physical education instructor. The district's interest lay in demonstrating that its physical education program was operated in conformance with reasonable care on the occasion being litigated. These interests were substantially related, and as a result, Hurley was impliedly biased notwithstanding this judicially crafted exception.

Plaintiff, however, failed to challenge Hurley in a proper and timely manner. A party making a particular challenge for cause is required to state the grounds therefor, *State v. Biles,* 6 Wash. 186, 188, 33 P. 347 (1893); *Gray v. Mississippi,* 481 U.S. 648, 95 L. Ed. 2d 622, 107 S. Ct. 2045 (1987); 47 Am. Jur. 2d *Jury* § 216 (1969), and it is not sufficient to declare an objection or challenge in general terms. *Biles,* at 188.

Moreover, a party making a challenge for implied bias must do so before making a challenge for actual bias, RCW 4.44.220(3),[16] before making peremptory challenges, RCW 4.44.220(4), and a fortiori before the jury is sworn. When a challenge is not made at trial, it is waived. *Catarau v. Sunde & d'Evers Co.,* 188 Wash. 592, 597, 63 P.2d 365 (1936); *Basil v. Pope,* 165 Wash. at 218-19; *State v. Lewis,* 31 Wash. 75, 71 P. 778 (1903). Concomitantly, we hold, though we have not been cited to any case on point, that when a challenge is tardily made during trial, whether to consider it and whether to grant or deny it are matters within the trial judge's discretion. *Cf. United States v. Northside Realty Assocs., Inc.,* 510 F. Supp. 668, 675-76 (N.D. Ga. 1981). This discretion exists even if the trial judge would have been required to grant the challenge as a matter of law had it been timely made, and to that extent the tardiness of the challenge effectuates a waiver of the right to have it granted. Discretion is to be exercised in light of all the circumstances existing in the case at the time the challenge is decided.[17]

---

[16]RCW 4.44.220 states:

"The challenges of either party shall be taken separately in the following order, including in each challenge all the causes of challenge belonging to the same class:

"(1) For general disqualification.

"(2) For implied bias.

"(3) For actual bias.

"(4) Peremptory."

[17]In at least some respects, the discretion described here is analogous to that which a trial judge exercises when asked to reopen the examination of a witness

When plaintiff first challenged Hurley, no grounds were stated, and in particular, there was no mention of implied bias. Thus, the trial judge did not err in denying the challenge, even though implied bias, if asserted, would have required that the challenge be granted.

When plaintiff next challenged Hurley, the judge suggested implied bias, and we will assume for argument's sake that the plaintiff adopted his suggestion. By that time, however, the plaintiff had used all her peremptory challenges, the jury had been sworn, the rest of the venire had been sent home, plaintiff had given her opening statement, and a mistrial would have been necessary absent the parties stipulating that 11 jurors could try the case. In light of those circumstances, the trial judge did not abuse his discretion by refusing to grant the challenge, notwithstanding that he would have been required to grant it had it been timely made.

## II
### New Trial

Plaintiff urges four reasons why her motion for new trial should have been granted. First, she argues that Hurley had prior knowledge about the case. Although made in the context of a motion for new trial, this is nothing other than a challenge for actual bias, and that type of challenge has been discussed above.

Second, plaintiff argues that Hurley gave misleading answers during voir dire. The record, however, does not support the assertion that Hurley gave false or misleading answers. On the contrary, he spoke openly of his relationships with all parties. He even said that he would rather not serve on the case, and that he had lost sleep on the night preceding the second day of trial. At most, Hurley unintentionally failed to volunteer information for which he was not asked, and juror conduct of that sort does not require a new trial. *State v. Brenner,* 53 Wn. App. 367, 372,

for tardy questions. *E.g., In re Ott,* 37 Wn. App. 234, 240, 679 P.2d 372 (1984); *Ross v. Pearson,* 31 Wn. App. 609, 613–14, 643 P.2d 928 (1982).

768 P.2d 509, *review denied,* 112 Wn.2d 1020 (1989); *State v. Rempel,* 53 Wn. App. 799, 803, 770 P.2d 1058 (1989), *rev'd on other grounds,* 114 Wn.2d 77, 785 P.2d 1134 (1990).

Third, plaintiff asserts that Hurley imparted to the other jurors "information which he was specifically told not to impart by the trial judge," and somewhat paradoxically, that Hurley, "due to restrictions placed on him by the trial judge, was not permitted to participate in the jury deliberation." Neither assertion is supported by the record.

█ Finally, plaintiff argues that the trial court erred by refusing to allow her to anticipate the defendants' defenses during opening statement. While it is not error to allow a plaintiff to anticipate a defense, *Snowhill v. Lieurance,* 72 Wn.2d 781, 782, 435 P.2d 624 (1967), neither is it necessarily prejudicial to preclude a plaintiff from doing so. Here, the plaintiff made no offer that would allow us to discern what she would have said had she been permitted, and it seems inconceivable that she did not have the opportunity to say whatever it was during the evidential or closing argument phases of the case. Additionally, the trial court characterized plaintiff's comments as argument rather than an anticipation of defenses. That characterization was a matter for the discretion of the court, *State v. Kroll,* 87 Wn.2d 829, 835, 558 P.2d 173 (1976); *State v. Braxton,* 20 Wn. App. 489, 491, 580 P.2d 1116 (1978), and nothing before us shows that it was incorrect.

Affirmed.

WORSWICK, C.J., and ALEXANDER, J., concur.